**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 15, 2011**

—————

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————

**No. 10-5072**

—————

**ROGER BLACKWELL,**                                        **Appellant,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE,**        **Appellee.**

—————

**APPELLEE'S BRIEF**

—————

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

—————

**RONALD C. MACHEN JR.**
**United States Attorney**

**R. CRAIG LAWRENCE**
**DAVID C. RYBICKI**
**Assistant United States Attorneys**

**United States Attorney's Office for
the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Ph.  (202) 353-4024**

**C.A. No. 10-5072**

# <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

## <u>Parties</u>

Appellant is Roger Blackwell ("Blackwell"), plaintiff in the District Court. Appellee is the United States Department of Justice ("DOJ"), of which the Federal Bureau of Investigation ("FBI"), defendant in the District Court, is a component. There is no <u>amicus curiae</u>.

## <u>Ruling Under Review</u>

Blackwell appeals the Memorandum Opinion and Order of January 15, 2010, Civil Action No. 1:09-cv-00661-RMC, by the Honorable Rosemary M. Collyer, granting in full the FBI's motion for summary judgment and denying in full Blackwell's cross-motion for summary judgment.

## <u>Related Cases</u>

This case has not previously been before this Court.  There are no related cases.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................i

GLOSSARY...................................................................................vi

RELEVANT STATUTE.................................................................. vii

STATEMENT OF JURISDICTION.................................................. viii

ISSUES PRESENTED.....................................................................ix

COUNTERSTATEMENT OF THE CASE............................................1

STATEMENT OF FACTS ...............................................................4

SUMMARY OF ARGUMENT .........................................................12

ARGUMENT ...............................................................................15

    I.    Standard of Review ..........................................................15

    II.    Documents the FBI Created While Investigating Blackwell's Financial Crimes, and Subsequently Withheld Under Exemption 7, Were Compiled for Law Enforcement Purposes .........................................15

    III.    The FBI's Invocation of Exemption 7(C) to Withhold Information About Third Parties Contained in Blackwell's Investigatory File Was Proper .........................................................................20

        A.    Blackwell fails to articulate any public interest cognizable under Exemption 7(C).........................................................22

        B.    Blackwell has proffered no competent evidence in support of the allegations of government misconduct he raises .....................23

        C.    Favish's balancing test weighs decisively in favor of the targeted individuals' interests in personal privacy ................................27

IV.    The District Court Properly Upheld the FBI's Invocation of
       Exemptions 2 and 7(E) to Protect Confidential, Non-Public Forensic
       Techniques and Information...............................................................30

V.     The FBI's Search for Responsive Records was Adequate..................36

VI.    The FBI's <u>Vaughn</u> Index is Adequate.................................................40

CONCLUSION ........................................................................................................43

# TABLE OF AUTHORITIES[*]

## FEDERAL CASES

Allen v. CIA, 636 F.2d 1287 (D.C. Cir. 1980)................................................30

Barnard v. Dep't of Homeland Sec., 598 F. Supp. 2d 1 (D.D.C. 2009) .......34

Beck v. Dep't of Justice, 997 F.3d 1489 (D.C. Cir. 1993)............................25

Billington v. Dep't of Justice, 69 F. Supp. 2d 128 (D.D.C. 1999)................34

Blackwell v. FBI, 680 F. Supp. 2d 79 (D.D.C. 2010) ....................................2

\* Boyd v. Criminal Div. of the U.S. Dep't of Justice, 475 F.3d 381 (D.C. Cir. 2006).................................................................................20, 24, 33

Brady v. Maryland, 373 U.S. 83 (1963) ...................................................2, 18

Campbell v. U.S. Dep't of Justice, 164 F.3d 20 (D.C. Cir. 1998) ...............16

Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046 (D.C. Cir. 2009)......................23

Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981)...............................................................................30, 32

Dorsett v. U.S. Dep't of Treasury, 307 F. Supp. 2d 28 (D.D.C. 2004).........34

Dunkelberger v. Dep't of Justice, 906 F.2d 779 (D.C. Cir. 1990) ...............25

Edwards v. Dep't of Justice, 2004 WL 2905342 (D.C. Cir. Dec. 14, 2004) .......................................................................38

Elliott v. U.S. Dep't of Agric., 596 F.3d 842 (D.C. Cir. 2010)....................39

Engelking v. DEA, 119 F.3d 980 (D.C. Cir. 1997)......................................22

---

[*] Cases chiefly relied upon are marked with asterisks.

i

Founding Church of Scientology v. Smith, 721 F.2d 828
    (D.C. Cir. 1983) ......................................................................30

Greenhill v. Spellings, 482 F.3d 569 (D.C. Cir. 2007) .................................39

Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770 (D.C. Cir. 1981) ............18

Iturralde v. Comptroller of the Currency, 315 F.3d 311
    (D.C. Cir. 2003) ......................................................................38

Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771 (D.C.
    Cir. 2002) ...........................................................................40, 41

Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146
    (D.D.C. 2004) .........................................................................32

Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., __ F. Supp. 2d
    __, 2010 WL 3564260 (D.D.C. Sept. 9, 2010) ........................................26

*   Keys v. U.S. Dep't of Justice, 830 F.2d 337 (D.C. Cir. 1987)..........41, 42, 43

    Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998)....................25

    King v. U.S. Dep't of Justice, 830 F.2d 210 (D.C. Cir. 1987) ....................19

    Landmark Legal Found. v. IRS, 267 F.3d 1132 (D.C. Cir. 2001) ...............15

    Loving v. Dep't of Defense, 550 F.3d 32 (D.C. Cir. 2008) .........................40

*   Martin v. Dep't of Justice, 488 F.3d 446 (D.C. Cir. 2007) ..............21, 27, 28

    Maydak v. U.S. Dep't of Justice, 362 F. Supp. 2d 316 (D.D.C. 2005).........34

    McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183
        (D.C. Cir. 1994).....................................................................25

    Meeropol v. Meese, 790 F.2d 942 (D.C. Cir. 1986) .....................................12

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981) .................36

* Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157
    (2004)..................................................................... 20, 21, 23, 24, 25, 28

Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873
    (D.C. Cir. 1989)..................................................................29, 30

Nat'l Treasury Employees Union v. U.S. Customs Serv., 802 F.2d 525
    (D.C. Cir. 1986)........................................................................30

Nation Magazine v. U.S. Customs Serv., 71 F.3d 885 (D.C. Cir. 1995) ......27

* Oguaju v. United States, 288 F.3d 448 (D.C. Cir. 2002) ........................22, 38

* Oguaju v. United States, 378 F.3d 1115 (D.C. Cir. 2004) .........21, 22, 24, 25

Oguaju v. United States, 386 F.3d 273 (D.C. Cir. 2004) ........................21, 22

Oguaju v. U.S. Marshals Serv., 541 U.S. 970 (2004) .................................22

* Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982).....................................16, 17

Rosenfeld v. U.S. Dep't of Justice, 761 F. Supp. 1440
    (N.D. Cal. 1991) ...................................................................18, 19

Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803
    (9th Cir. 1995) ....................................................................18, 19, 33, 34

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991) ..............18, 36

* Shaw v. FBI, 749 F.2d 58 (D.C. Cir. 1984) ...........................................19, 20

Sprint Corp. v. FCC, 331 F.3d 952 (D.C. Cir. 2003) ....................................15

Struth v. FBI, 673 F. Supp. 2d 949 (E.D. Wis. 1987) ...................................34

Taylor v. U.S. Dep't of Justice, 257 F. Supp. 2d 101 (D.D.C. 2003) ...........10

iii

U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,
    489 U.S. 749 (1989) ...............................................................21, 23, 27, 29

United States v. Armstrong, 517 U.S. 456 (1996) .......................................24

United States v. Blackwell, 459 F.3d 739 (6th Cir. 2006) ..............1, 4, 5, 6, 7

United States v. Perkins, 138 F.3d 421 (D.C. Cir. 1998) .............................26

Wheeler v. U.S. Dep't of Justice, 403 F. Supp. 2d 1 (D.D.C. 2005) ............35

Windels, Marx, Davies & Ives v. Dep't of Commerce, 576 F. Supp.
    405 (D.D.C. 1983) ......................................................................................34

## DOCKETED CASES

Blackwell v. United States, Crim. No. 2:04-cr-00134
    (S.D. Ohio Mar. 30, 2010).......................................................................1, 7

## FEDERAL STATUTES

5 U.S.C. § 552.................................................................................................. iii

5 U.S.C. § 552(a)(4)(B) ...................................................................................iv

5 U.S.C. § 552(b)(2) ....................................... 3, 11, 13, 14, 30, 31, 32, 33, 35

5 U.S.C. § 552(b)(3) ......................................................................................11

5 U.S.C. § 552(b)(6) ......................................................................................11

5 U.S.C. § 552(b)(7) ......................................................................v, 13, 15, 16

5 U.S.C. § 552(b)(7)(A)...................................................................................4

5 U.S.C. § 552(b)(7)(C) 2, 3, 11, 13, 14, 15, 20, 22, 23, 24, 27, 28, 29, 33, 42

5 U.S.C. § 552(b)(7)(D)....................................................................4, 11, 15

5 U.S.C. § 552(b)(7)(E) ............................................... 3, 13, 15, 20, 31, 32, 35

5 U.S.C. § 552(b)(8) ..................................................................................11

5 U.S.C. § 552(j)(2) ...................................................................................11

15 U.S.C. § 78ff ..........................................................................................6

15 U.S.C. § 78j ............................................................................................6

15 U.S.C. § 78u(d)(1) ...............................................................................17

18 U.S.C. § 371 ...........................................................................................6

18 U.S.C. § 1001 .........................................................................................6

18 U.S.C. § 1505 .........................................................................................6

18 U.S.C. § 6002 .......................................................................................26

18 U.S.C. § 6003 .......................................................................................26

28 U.S.C. § 1291 ........................................................................................iv

# **GLOSSARY**

CART ....................................................... Computer Analysis and Response Team

CIA ............................................................... Central Intelligence Agency

CRS ...................................................................... Central Records System

DOJ ........................................................................ Department of Justice

ELSUR ................................................................ Electronic Surveillance

FBI ...................................................................... Federal Bureau of Investigation

FOIA .......................................................... Freedom of Information Act

NASD ................................................... National Association of Securities Dealers

SEC .............................................................. Securities and Exchange Commission

USMS ..................................................................... United States Marshals Service

## <u>RELEVANT STATUTE</u>

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is set forth in the Addendum to the Appellant's brief.

## <u>STATEMENT OF JURISDICTION</u>

This case arises under the FOIA, 5 U.S.C. § 552.  This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1291 because the District Court's January 15, 2010, Order is a final, appealable order.  Blackwell timely filed a notice of appeal on March 13, 2010.  JA 6, 391-92.[1]

---

[1] References to "JA" are to the corresponding page in the Joint Appendix.

## ISSUES PRESENTED

Appellee contends the following issues are presented:

1.      Whether the District Court correctly held that records the FBI created during the criminal investigation and prosecution of Blackwell were "compiled for law enforcement purposes" and therefore properly withheld under Exemption 7.  5 U.S.C. § 552(b)(7).

2.      Whether the District Court correctly held that Blackwell's desire to obtain FBI records that he suspects may contain <u>Brady</u> material or evidence of prosecutorial misconduct is not a public interest cognizable under Exemption 7(C).

3.      Whether the District Court correctly held that the FBI properly invoked Exemption 2 and Exemption 7(E) to withhold records that describe confidential data-collection techniques the FBI uses when undertaking forensic examination of computers during a criminal investigation.

4.      Whether the District Court correctly held that the FBI properly refused to search investigatory records pertaining to third parties after Blackwell failed to provide a privacy waiver or proof of death from the targeted individual or show that the public interest in release of the records outweighed the individual's interest in personal privacy.

5.      Whether the District Court correctly held that the descriptions of exempt and nonsegregable information contained in the FBI's <u>Vaughn</u> index were reasonably detailed.

## COUNTERSTATEMENT OF THE CASE

This FOIA case is the last remaining legal battle in a campaign that Blackwell embarked upon following his 2005 conviction on 19 counts including insider trading, conspiracy to commit insider trading, and obstruction of justice. See United States v. Blackwell, 459 F.3d 739 (6th Cir. 2006) (affirming convictions in full); Blackwell v. United States, Crim. No. 2:04-cr-00134 (S.D. Ohio Mar. 30, 2010) (denying habeas motion). Insisting that federal prosecutors wrongfully obtained his conviction through witness tampering, concealment of exculpatory evidence, and sundry misconduct, in 2007 Blackwell filed a FOIA request seeking records compiled during the FBI's criminal investigation and the DOJ's prosecution of him. See JA 25-30. The request sought information about four individuals who testified before the Securities and Exchange Commission ("SEC" or "Commission") or at Blackwell's criminal trial, including his ex-wife and erstwhile business associates. See id. 25-26.

After identifying approximately 3,300 pages potentially responsive to the request, the FBI reviewed over 1,800 pages of responsive records, around 1,600 of which were released in full or in part. See id. 25, 115-17. Blackwell subsequently objected to the adequacy and scope of the search the FBI conducted and to withholdings the FBI made pursuant to the FOIA's exemptions. He filed suit in April 2009. See id. 2, 7-12.

The DOJ moved for summary judgment; Blackwell cross-moved.  See id. 2-3.  On January 15, 2010, the District Court granted the DOJ's motion in full and denied Blackwell's.  See id. 6, 370-90; Blackwell v. FBI, 680 F. Supp. 2d 79 (D.D.C. 2010).  With respect to the adequacy of the FBI's search, the District Court held that the agency's First and Second Declarations of David M. Hardy, Section Chief of the FBI's Record and Information Dissemination Division, described in sufficient detail how the FBI undertook a good-faith, reasonable search of all records systems likely to possess the information Blackwell requested.  See JA 377-80.  All reasonably segregable information had been released to Blackwell.  Id. 388-89.  The District Court further held that the litany of unsupported allegations and conspiracy theories Blackwell raised in the declaration he filed in opposition to the FBI's summary-judgment motion was insufficient to rebut the FBI's declarations.  Id. 379-80.  Nor, the District Court held, could Blackwell trump the FBI's invocation of FOIA exemptions by arguing that the withheld information must be released under Brady v. Maryland, 373 U.S. 83 (1963).  Id.  The District Court noted that Blackwell's Brady claim could be raised in a collateral proceeding.  Id. 380.

With respect to the FBI's invocation of Exemption 7(C), the District Court held that Blackwell had failed to articulate "any public interest that would be served

by disclosure" of the third-party information he requested.  Id. 385.[2]  The District

Court observed that as a matter of this Circuit's law, there is no public interest

cognizable under Exemption 7(C) at stake when an individual seeks to obtain

information in hope of overturning his criminal conviction.  Id.  Further, the District

Court noted that the privacy interests of the third parties about whom Blackwell

sought information were not waived by the FBI's inadvertent release of some of

their names.  Id.

    With respect to the FBI's invocation of Exemptions 2 and 7(E), the District

Court found that the FBI had properly withheld information regarding techniques

the agency's Computer Analysis and Response Team ("CART") used in forensic

examination of computers it confiscated from one of Blackwell's businesses during

the criminal investigation.  Id. 381-82.  The District Court further found that

forensic summary reports describing certain non-public methods of data collection,

organization, and presentation were properly withheld as internal law enforcement

techniques, would serve no public purpose if disclosed, and could in fact aid

individuals seeking to evade investigation by the FBI if disclosed.  Id. 382.

    The District Court also held that the FBI had properly asserted several other

exemptions that Blackwell does not challenge on appeal.  With respect to

Exemption 3, the District Court upheld the FBI's withholding of information that

---

[2]  Having held that the FBI properly invoked Exemption 7(C), the District
Court declined to analyze the FBI's concurrent assertion of Exemption 6.  JA 384.

would divulge protected aspects of its grand-jury investigation, including the identity of witnesses and the scope, length, direction, and strategy of the investigation. <u>See</u> <u>id.</u> 383. The District Court also held that the FBI had properly asserted Exemption 7(A) to protect records the release of which would interfere with ongoing law enforcement proceedings, and had properly asserted Exemption 7(D) to protect the identity of a foreign governmental agency that provided information under an express assurance of confidentiality. <u>Id.</u> 385-88. Finally, the District Court upheld the FBI's invocation of Exemption (j)(2) of the Privacy Act, which protects all records Blackwell requested. <u>Id.</u> 380-81.

This appeal timely followed. <u>See</u> <u>id.</u> 6, 391-92.

## STATEMENT OF FACTS

In 2005, a federal jury in the Southern District of Ohio convicted Blackwell of 19 counts including insider trading, conspiracy to commit insider trading, conspiracy to obstruct an agency proceeding, and obstruction of an agency proceeding. <u>See</u> <u>id.</u> 47, 372; <u>United States</u> v. <u>Blackwell</u>, 459 F.3d 739 (6th Cir. 2006) (affirming convictions). The District Court sentenced Blackwell to 72 months' imprisonment and, finding that an upward departure from the Sentencing Guidelines was warranted given the gravity of his crimes, ordered Blackwell to pay a $1,000,000 fine. JA 47, 372; <u>Blackwell</u>, 459 F.3d at 771.

Blackwell's conviction resulted from a string of financial crimes he, his then-wife Tina Stephan-Blackwell ("Stephan-Blackwell"), and other co-conspirators committed in 1999 when Blackwell sat on the board of directors of Worthington Foods ("Worthington"), a small natural-foods company formerly based in Columbus, Ohio.  See JA 303, 371.  In July 1999, the cereal giant Kellogg Company ("Kellogg") initiated negotiations to buy Worthington out.  Id. 303, 371. Subsequent purchases of Worthington stock by Blackwell's family – his father, son, and former in-laws, Gertrude and Alfred Stephan ("the Stephans") – and close business associates – Justin Voss and Jack Kahl – attracted the attention of the National Association of Securities Dealers ("NASD"), which informed the SEC of anomalous increases in the trading volume and price of Worthington's stock.  Id. 371; Blackwell, 459 F.3d at 749.

The SEC, via the FBI, launched an investigation.  Pursuant to the SEC's request, Kellogg forwarded Blackwell a list of purchasers of Worthington stock and instructed him to report whether he had relationships with any of the listed individuals.  Blackwell, 459 F.3d at 749.  Blackwell complied but denied any wrongdoing and admitted that although he promoted purchase of Worthington stock because it was a good deal, he never disclosed the impending buyout to anyone.  Id.

The SEC was not convinced.  In November 2000, it subpoenaed Blackwell and ordered him to produce documents and appear to testify.  Id.  Before the SEC,

5

Blackwell again denied he had ever disclosed any information about the buyout.  Id. In 2002, Stephan-Blackwell and her parents, the Stephans, also testified before the Commission and denied that Blackwell had furnished them with any insider information.  JA 371-72; Blackwell, 459 F.3d at 749-50.  In early 2003, Blackwell and Stephan-Blackwell separated and eventually divorced in 2004.   Stephan-Blackwell remarried.  See JA 371-72; Blackwell, 459 F.3d at 750.

As the FBI's investigation progressed, Stephan-Blackwell and the government eventually reached an agreement: she and her parents would receive immunity from prosecution in return for her testimony against Blackwell and her admission to conspiracy, perjury, and insider trading.  JA 372.  Around the same time, Blackwell's former business associate, Jack Kahl, also approached the FBI about his involvement in Blackwell's crimes and admitted that Blackwell had indeed tipped him off about the Kellogg buyout.  Id.  In August 2004, a grand jury indicted Blackwell, one of his former business enterprises, and four other individuals on a welter of charges including insider trading in violation of 15 U.S.C. §§ 78j and 78ff, conspiracy to commit insider trading in violation of 18 U.S.C. § 1505, conspiracy to obstruct agency proceedings in violation of 18 U.S.C. § 371, and making false statements in violation of 18 U.S.C. § 1001.  Id.

At trial, Blackwell's ex-wife Stephan-Blackwell testified that she had tipped off her parents and cousin about the Kellogg buyout after discussing the matter with

Blackwell; that she and Blackwell had given her parents the money they used to buy the Worthington stock; that she and Blackwell had lied to the NASD and to the SEC about the illicit insider tips they dispensed; that she had told her mother, Gertrude Stephan, to lie to the SEC; that she had willfully destroyed evidence of Blackwell's involvement with the illicit stock purchases; and that she and Blackwell had conspired to conceal incriminating information from the SEC.  See Blackwell, 459 F.3d at 750-51.

On June 20, 2005, the jury convicted Blackwell.  See JA 372.  Following his conviction, Blackwell was incarcerated in the Federal Correctional Institute in Morgantown, West Virginia.  See Appellant's Br. at 3 n.1.

Around two years later on April 19, 2007, Blackwell's counsel, James H. Lesar, Esq., sent an extensive FOIA request to FBI Headquarters on Blackwell's behalf.  Through Lesar, Blackwell sought "[a]ll records pertaining in any way to Alfred Stephan, Gertrude Stephan, Tina Stephan Blackwell," and to his former business associate Jack Kahl "related to [United States v. Blackwell, No. CR 2-04-134 (S.D. Ohio 2005)]," including all immunity agreements, witness interviews, correspondence, notes, memoranda, emails, and settlement agreements.  JA 13-14. Blackwell requested that the FBI search records systems and ELSUR indices located at its Cincinnati and Columbus Field Offices and at FBI Headquarters.  Id. 14.   David  Hardy,  Section  Chief  of  the  FBI's  Record  and  Information

7

Dissemination Division, responded to Blackwell's FOIA request by letter on April 24, 2007, informing Lesar that the request was being returned because it lacked information sufficient for the FBI to conduct an accurate search of its Central Records System ("CRS"). <u>Id.</u> 77. Hardy instructed Lesar to return his client's initial request letter and include Blackwell's full name, address, date of birth, place of birth, aliases, and any other information that would facilitate a search. <u>Id.</u>

On August 27, 2007, Lesar sent a second FOIA request to the FBI, adding this time around that "Dr. Blackwell's request includes records pertaining to third parties." <u>Id.</u> 18. Lesar supported the request for third-party records with a lengthy argument that the "public interest" warranted disclosure of the requested records. <u>Id.</u> By letter of September 6, 2007, the FBI acknowledged the August 27 request and informed Lesar that it would undertake a search of the CRS. <u>Id.</u> 84. A few weeks later, on September 25, 2007, the FBI notified Lesar that "[n]o records responsive to [Blackwell's] request were located by a search of the automated and manual indices" of the CRS at FBI Headquarters. <u>Id.</u> 86. The FBI instructed Lesar to contact field offices directly if he wished the FBI to search records systems located outside FBI Headquarters. <u>Id.</u>

On October 24, 2007, Lesar submitted a FOIA request to the FBI's Cincinnati Field Office.  Id. 89-98.[3]  The FBI acknowledged receipt on November 16, 2007.  Id. 100.  The FBI responded by letter on May 15, 2008, advised Lesar of the status of the request and noted that the FBI was retrieving potentially responsive documents.  Id. 102.  The FBI informed Lesar that "the greatest single factor" contributing to the lengthy processing time "is the number of documents associated with your request."  Id.  A subsequent status update was sent on July 22, 2008.  Id. 34.

After the FBI had completed its search for responsive records it sent Lesar a letter on July 31, 2008, notifying him that it had located approximately 3,319 potentially responsive pages contained in a multiple-subject investigative file from the Cincinnati Filed Office and that duplication costs could exceed $300.  Id. 35. The FBI sent additional status letters on October 20, 2008, and February 2, 2009, in which it notified Lesar that the request had been sent to an FBI analyst for review and redaction, if necessary.  Id. 36-37.

On March 16, 2009, Lesar sent a fax to the FBI's Public Information Center in Winchester, Virginia, in which he offered to reduce the scope of the request to

---

[3]  The request is dated October 2, 2007 – Lesar originally had sent it to the wrong address.  See JA 97.  Lesar also sent the October 24, 2007, request to the wrong address but it was eventually delivered to the FBI.  See id. 98.

"[a]ll FD 302s[4] [sic] and notes of interviews on [sic] Alfred Stephens [sic], Gertrude Stephens [sic], and Tina Stephens [sic]" if the FBI agreed to process the revised request within 30 days. Id. 110.[5] The FBI did not respond to Lesar's proposal or otherwise acknowledge the faxes and continued to process the original request that Lesar submitted in October 2007.[6]

The FBI responded on April 15, 2009, informing Lesar the original request had been processed and that 1,877 pages were determined to be responsive.[7] Id. 115. Of those, 1,660 would be released. Id. In total, 1,103 pages were released in full, 557 pages were released in part, and 209 pages were withheld in their entirety. Id. 50 (¶ 20). After determining that Blackwell had failed to provide a privacy waiver or proof of death from any of the third parties whose information he sought,

---

[4] An FD-302 is a form used by FBI special agents and contains information collected during an interview. FD-302s are routinely maintained in the FBI's investigative files. See Taylor v. U.S. Dep't of Justice, 257 F. Supp. 2d 101, 103 n.4 (D.D.C. 2003)

[5] Lesar sent an identical request to a different fax number on March 19, 2009. See JA 112.

[6] In its factual synopsis, the District Court incorrectly reported that "[t]he FBI reviewed…records responsive to Dr. Blackwell's reduced request." JA 374. Both parties to this appeal agree that the FBI reviewed and produced documents responsive to the original October 2007 request, not the revised request. See Appellant's Br. at 27-28.

[7] The April 15, 2009, letter incorrectly states that "1877 page(s)" had been reviewed. JA 115. The actual number of pages reviewed was 1,869. See id. 50 (¶ 20 & n.4), 121.

and after concluding that Blackwell's stated desire to obtain the records in hope of overturning his criminal conviction did not outweigh the privacy interests of the third parties, the FBI informed Lesar that the third-party information his client sought "was withheld from you pursuant to 552(b)(7)(C) and (b)6 which pertains to material in which the release would constitute an unwarranted invasion of the personal privacy of third parties." Id. 116.  The FBI further explained that the third-party documents were contained in "Cincinnati Field Office file 318-CI-73448," a "multiple subject file." Id.  Pursuant to agency policy, the FBI explained, "only those documents which specifically mention the subject of the request," and not those affecting the privacy interests of third parties, would be released. Id.  The FBI asserted that the remaining responsive information was being withheld under FOIA Exemptions 2, 3, 7(D), 7(E), and 8, and under Privacy Act Exemption (j)(2). Id. 115.  A week later, on April 22, 2009, the FBI informed Lesar that it would provide the responsive documents in electronic format and waive duplication fees. Id. 119.

Blackwell filed the complaint initiating this FOIA lawsuit in April 2009.  See id. 2, 7.  Given the imposing quantity of records at issue, the parties agreed that Blackwell would select up to 200 pages to use as the basis for the FBI's Vaughn

11

index and summary-judgment motion.  See id. 50 (¶ 22), 377.[8]  To create the

Vaughn index, the FBI reprocessed the 198 pages that Blackwell selected.  See id.

56 (¶ 38).  Of those, 36 were withheld in their entirety, 159 were released in part,

and three were released in full.  Id. 56 (¶ 38), 377.  The FBI then marked the

redacted and withheld documents with category codes corresponding to the

exemptions invoked and described the nature of the information withheld.  Id. 57

(¶¶ 38-39).

## SUMMARY OF ARGUMENT

In response to Blackwell's FOIA request, the FBI uncovered, segregated, and

released all non-exempt information and properly refused to search for third-party

records after determining that Blackwell had failed to justify the significant

invasion of personal privacy which disclosure of those records would entail.

The records responsive to Blackwell's request were located in an

investigative file and were created incident to the FBI's investigation, and the

DOJ's subsequent prosecution, of Blackwell for his various financial crimes.  The

FBI has beyond peradventure established a rational nexus between Blackwell and

one of the agency's law enforcement duties, namely, investigation of the federal

---

[8]  This Court has long endorsed the sampling procedure the parties used in this case.  See, e.g., Meeropol v. Meese, 790 F.2d 942, 958 (D.C. Cir. 1986) ("Sampling procedures have been held to be appropriately employed, where as here the number of documents is excessive and it would not realistically be possible to review each and every one.") (citation and internal quotation marks omitted).

securities laws and, by obtaining Blackwell's conviction in a federal district court, has unmistakably linked Blackwell to the crimes investigated.  Accordingly, the records at issue were "compiled for law enforcement purposes" within the meaning of Exemption 7.  5 U.S.C. § 552(b)(7).

Having established that the records meet Exemption 7's law-enforcement-purposes threshold, the FBI has properly invoked several subsections of that statutory provision to protect sensitive information about private citizens as well as confidential, non-public forensic techniques used to uncover and investigate crime.

The FBI forestalled the "unwarranted invasion of [the] personal privacy" of individuals Blackwell named in his request by invoking Exemption 7(C).  Id. § 552(b)(7)(C).  Insisting that he fell victim to prosecutorial misconduct and was wrongfully convicted as a result, Blackwell candidly admits that he submitted his request in order to obtain third-party records he hoped would contain evidence of the misconduct he suspects.  Blackwell's desire to fish for potentially exculpatory records in the FBI's files is not a public interest recognized by Exemption 7(C), however, and so cannot outweigh the substantial privacy interests that the individuals named in the records enjoy.

Next, the FBI invoked Exemptions 2 and 7(E) to prevent disclosure of non-public law enforcement techniques it uses when undertaking forensic investigation of computers.  Both exemptions cover the withheld material because disclosure

13

could reasonably be expected to lead to circumvention of the law. Unlike the calculus this Court applies in the context of Exemption 7(C), the public interest in disclosure plays no role in the Court's determination whether Exemption 2 has been properly invoked. The FBI has reasonably described the nature of the information withheld as well as the risks of disclosure and need not justify the withholdings by offering expert testimony, as Blackwell incorrectly argues.

Aside from the exemptions it invoked, the FBI also undertook an adequate search for the documents Blackwell requested, as the declarations submitted by the FBI describe. The FBI was not, however, obliged to search for the third-party records Blackwell requested because he failed to submit privacy waivers or proof of death from the targeted individuals and did not otherwise demonstrate that the public interest in release trumped the third parties' substantial interest in personal privacy. Accordingly, whether the FBI actually searched for the third-party records is immaterial because the agency has deprived Blackwell of nothing to which he is legally entitled.

Finally, the Vaughn index the agency submitted is legally sufficient and adequately justifies the withholdings. The degree of exacting descriptive detail that Blackwell claims the FBI must provide in the index is simply contrary to this Court's settled law. This Court has in fact long endorsed the category-coding system the FBI uses in its Vaughn index.

14

# ARGUMENT

## I.     Standard of Review

This Court reviews de novo the claims upon which the District Court entered summary judgment for Appellee.  See Landmark Legal Found. v. IRS, 267 F.3d 1132, 1134 (D.C. Cir. 2001).

## II.     Documents the FBI Created While Investigating Blackwell's Financial Crimes, and Subsequently Withheld Under Exemption 7, Were Compiled for Law Enforcement Purposes.

Blackwell contends that the FBI's invocation of Exemptions 7(C), 7(D),[9] and 7(E) was improper because the records withheld were not "compiled for law enforcement purposes," the threshold requirement for invocation of Exemption 7's subsections.  Appellant's Br. at 29.[10]  Not only is that argument is meritless, it also

---

[9]     In his brief, Blackwell mentions in passing that the FBI's invocation of Exemption 7(D) was improper but provides no argument to support his barebones assertion.  See Appellant's Br. at 29 (asserting without supporting argument that the FBI "failed to show that disclosure would cause the harms specified under exemption[]…7(D)").   Blackwell's Exemption 7(D) claim is thus "asserted but unanalyzed" and not properly before this Court.  Sprint Corp. v. FCC, 331 F.3d 952, 961 (D.C. Cir. 2003).

[10]     Blackwell's argument on this score is less than clear, however.  Specifically, he argues that invocation of Exemption 7 is improper because "[t]he FBI failed to meet its burden by showing that information indicating prosecutorial misconduct or the withholding of exculpatory evidence was compiled for law enforcement purposes."   Appellant's Br. at 29.   That argument, of course, misunderstands the applicable threshold showing the FBI must make, which bears no relation to "prosecutorial misconduct" or "withholding of exculpatory evidence." The FBI nonetheless assumes for purposes of this brief that Blackwell contends the FBI fails Exemption 7's threshold test.

obviously contradicts the theme developed throughout Blackwell's brief that the investigatory records he seeks may contain <u>Brady</u> material and evidence of prosecutorial misconduct.[11]

"Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." <u>Campbell</u> v. <u>U.S. Dep't of Justice</u>, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing <u>Pratt</u> v. <u>Webster</u>, 673 F.2d 408, 419 (D.C. Cir. 1982)). Accordingly, to establish a valid law enforcement purpose under Exemption 7, the FBI's supporting declaration need only (1) show that a "rational nexus" links the FBI's investigation of Blackwell with "one of the agency's law enforcement duties," <u>Pratt</u>, 673 F.2d at 420; and (2) draw a "connection" between Blackwell, his involvement in the Worthington stock purchases, and a "possible security risk or violation of federal law," <u>id.</u> at 421.

There can be little doubt that the disputed records were compiled during the course of the FBI's investigation of Blackwell's crimes. Indeed, Blackwell's own FOIA request <u>assumes</u> that the records at issue were created for law enforcement purposes insofar as it seeks all records "related to the case U.S. v. Blackwell" in the form of investigatory interviews, immunity agreements, and other documents that

---

[11]     The point Blackwell contests here is in fact so obvious from the administrative record that the District Court never expressly held that the disputed records were compiled for law enforcement purposes and instead proceeded directly to discussion of the FBI's invocation of Exemption 7's various subsections. <u>See</u> JA 381-87.

were compiled as the government made its case against him.  Appellant's Br. at 7.

It is undisputed that the records Blackwell sought were contained in an FBI

investigatory file from the Cincinnati Field Office, <u>see</u> JA 49, and contained Form

FD-302s and other records that the FBI's officials routinely create pursuant to a law

enforcement investigation, <u>see</u> <u>id.</u> 127-369.     Moreover, the FBI's Hardy

Declarations amply establish the "rational nexus" that <u>Pratt</u> requires between the

FBI's investigation of Blackwell's crimes and "one of the agency's law

enforcement duties," namely, enforcement of federal securities laws.  <u>See, e.g.</u>, JA

47 (¶ 5), 59-74 (¶¶ 43-71); <u>see also</u> 15 U.S.C. § 78u(d)(1) (authorizing criminal

enforcement of the securities laws).

Likewise, there can be little doubt that the FBI has connected Blackwell with

a violation of federal law: a jury convicted him on 19 counts of insider trading,

obstruction of justice, and conspiracy.  Though Blackwell insists that he was

unjustly convicted, the conviction itself is not in dispute.  The FBI thus satisfies the

second prong of <u>Pratt</u>'s rational-nexus test as well.

Conceding that the records may indeed have been compiled for law

enforcement purposes, Blackwell modifies his argument somewhat.     <u>See</u>

Appellant's Br. at 29.  He claims that even if the disputed records were originally

compiled for law enforcement purposes, the FBI has somehow "waive[d]" its

assertion of Exemption 7 because Blackwell suspects that the information he seeks

may contain <u>Brady</u> material.  <u>Id.</u> at 31; <u>see</u> <u>id.</u> (arguing that "[o]bstruction regarding potentially exculpatory evidence is not compiled for law enforcement purposes, but in violation thereof").  The flaws in this argument are many.

First, other than conspiracy theories and his own unsubstantiated suspicion, Blackwell has never proffered evidence of any investigatory or prosecutorial misconduct affecting his criminal conviction.  As the District Court aptly observed, Blackwell's "mere speculation" regarding the existence of potentially exculpatory information cannot invalidate the FBI's properly justified withholdings.  JA 380; <u>see</u> <u>SafeCard Servs., Inc.</u> v. <u>SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of documents.'") (quoting <u>Ground Saucer Watch, Inc.</u> v. <u>CIA</u>, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Second, an agency's ability to invoke FOIA exemptions is not contingent upon unsupported allegations a requester may raise about withheld documents.  Here, Blackwell cites no authority for the exotic proposition that an agency somehow "waives" all withholdings made under Exemption 7 because a requester claims that withheld records could conceivably contain <u>Brady</u> material or otherwise aid him in challenging a criminal conviction.  The single case he does cite regarding his "waiver" argument is inapposite.  <u>See</u> Appellant's Br. at 29 (citing <u>Rosenfeld</u> v.

18

U.S. Dep't of Justice, 761 F. Supp. 1440 (N.D. Cal. 1991), rev'd in part, 57 F.3d 803 (9th Cir. 1995)).

The district court in Rosenfeld held that although the FBI can establish the requisite "rational nexus" between its law enforcement duties and certain records it decides to withhold under Exemption 7, a court need not sanction agency claims that are "pretextual" or "otherwise strain credulity." Rosenfeld, 761 F. Supp. at 1446 (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 230 (D.C. Cir. 1987)). Similarly, long before Rosenfeld this Court held that an agency's assertion of Exemption 7 is proper if "unrefuted by persuasive evidence that in fact another, nonqualifying reason prompted the investigation," for example, if an investigation is conducted "for purposes of harassment." Shaw v. FBI, 749 F.2d 58, 63-64 (D.C. Cir. 1984). Rosenfeld says nothing about the government's "wavier" of Exemption 7.

Rosenfield is inapplicable here because the record in this case is bereft of evidence suggesting that the FBI's investigation of Blackwell's crimes was pretextual or secretly actuated by an improper or otherwise "nonqualifying" reason. The sole reason for the investigation was law enforcement, pure and simple: the FBI took an interest in Blackwell and many other individuals after the SEC became aware of sudden, anomalous increases in the trading volume and price of Worthington stock. See JA 371-72. After a thorough, multi-year investigation, the

19

DOJ subsequently indicted Blackwell and four others.  Blackwell's contrary claims of "governmental misconduct that affected the workings of justice," id. 308, and the hypothesized possibility of "a systematic bias" in the FBI, id. 310, are supported by no evidence, let alone the "persuasive evidence" that Shaw demands.  The bottom line is that Blackwell's "[u]nsubstantiated assertions of government wrongdoing…do not establish 'a meaningful evidentiary showing'" that can invalidate the FBI's invocation of Exemption 7.  Boyd v. Criminal Div. of the U.S. Dep't of Justice, 475 F.3d 381, 388 (D.C. Cir. 2006) (quoting Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 175 (2004)).

## III.    The FBI's Invocation of Exemption 7(C) to Withhold Information About Third Parties Contained in Blackwell's Investigatory File was Proper.

Blackwell's challenge to the FBI's invocation of Exemption 7(C) is but a variation on the foundational (and erroneous) premise of his brief: a FOIA requester's unsupported suspicions that withheld records may contain exculpatory material entitles the requester to obtain law enforcement records about himself and about third parties.   That argument fails in the context of Exemption 7(C) and all other exemptions the FBI claims in this case.

The FBI withheld many of the investigatory records Blackwell seeks because their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) protects

the privacy of third parties named in the challenged records and can only be overcome by a showing that a significant public interest would be served by disclosure.  See Favish, 541 U.S. at 166.  The privacy interests Exemption 7(C) protects "are particularly difficult to overcome when," as here, "law enforcement information regarding third parties is implicated."  Martin v. Dep't of Justice, 488 F.3d 446, 457 (D.C. Cir. 2007) (citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 780 (1989)).  To make this particularly difficult showing, Favish requires Blackwell (1) to assert a cognizable public interest; (2) that he supports with competent evidence; and then (3) show that the information sought is likely to advance the interest asserted.  See Favish, 541 U.S. at 172; see also Oguaju v. United States, 378 F.3d 1115, 1116-17 (D.C. Cir. 2004), modified by 386 F.3d 273 (D.C. Cir. 2004).  If a public interest exists, the Court may consider it as "a counterweight on the FOIA scale…to balance against the cognizable private interests in the requested records."  Favish, 541 U.S. at 174.  If, however, there is no cognizable public interest at stake, the Court's inquiry ends because there is nothing "to put the balance into play."  Id. at 175.  Here, Blackwell falls well short of even the threshold requirement.

### A.    Blackwell fails to articulate any public interest cognizable under Exemption 7(C).

Blackwell scrupulously ignores this Court's controlling precedent that sinks his argument at the outset.  Following on the Supreme Court's decision in <u>Favish</u>, this Court rejected precisely the argument Blackwell makes here and held that a FOIA requester's desire to obtain <u>Brady</u> material is not a public interest for purposes of Exemption 7(C).  <u>See</u> <u>Oguaju</u> v. <u>United States</u>, 288 F.3d 448, 450 (D.C. Cir. 2002), <u>vacated sub nom.</u> <u>Oguaju</u> v. <u>U.S. Marshals Serv.</u>, 541 U.S. 970 (2004), <u>reinstated by</u> 378 F.3d 1115 (D.C. Cir. 2004), <u>modified by</u> 386 F.3d 273 (D.C. Cir. 2004).  And although Blackwell frames his FOIA request as an attempt to unmask government misconduct that he suspects may have occurred, at its heart his request is nothing more than a gambit designed to obtain information about private individuals for his personal use.

<u>Oguaju</u> and the rest of this Court's settled law on Exemption 7(C) categorically foreclose Blackwell's argument that his desire for information qualifies as a public interest.  <u>See</u> <u>id.</u> at 450 (The public interest "does not include helping an individual obtain information for his personal use."); <u>see also</u> <u>Engelking</u> v. <u>DEA</u>, 119 F.3d 980, 980-81 (D.C. Cir. 1997) (per curiam) ("To the extent [plaintiff] argues that he seeks exculpatory information, a requester's personal need for information is immaterial to whether that information is protected from

disclosure by one of the exemptions to the FOIA."). This is because the purpose a FOIA requester asserts in seeking records is irrelevant to the agency's exercise of FOIA exemptions. The only relevant public interest for purposes of Exemption 7(C) – what the Supreme Court has aphoristically described as "let[ting] citizens know what their government is up to" – does not encompass requests for information about a single criminal investigation or prosecution. Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046, 1059 (D.C. Cir. 2009) (quoting Reporters Comm., 489 U.S. at 773).

Because Blackwell has failed to state any public interest cognizable under Exemption 7(C), the Favish inquiry ends and the FBI's Exemption 7(C) withholdings should be upheld in their entirety.

**B.     Blackwell has proffered no competent evidence in support of the allegations of government misconduct he raises.**

Even were Blackwell's desire to obtain Brady material or information about suspected government misconduct sufficient to satisfy Favish's threshold test – though Oguaju plainly holds it is not – he fails to proffer any competent evidence to support his allegations. Under Favish, Blackwell must provide enough evidence that "would warrant a belief by a reasonable person" that government misconduct was afoot in his investigation or prosecution. 541 U.S. at 174. The evidence must "point[] with credibility to some actual misfeasance." Id. at 173 (emphasis added).

23

"Unsupported assertions of government wrongdoing…do not establish '[the] meaningful evidentiary showing" that <u>Favish</u> requires.   <u>Boyd</u>, 475 F.3d at 388 (quoting <u>Favish</u>, 541 U.S. at 175); <u>see</u> <u>Oguaju</u>, 378 F.3d at 1117 ("[M]ere assertions are not evidence of government impropriety…."); <u>see also</u> <u>id.</u> ("[I]n the absence of clear evidence to the contrary, courts presume that [government officers] have properly discharged their official duties.") (quoting <u>United States</u> v. <u>Armstrong</u>, 517 U.S. 456, 464 (1996)).   Without adducing the clear evidence of wrongdoing that <u>Favish</u> demands, a FOIA requester cannot rebut the "presumption of legitimacy accorded to the Government's official conduct." <u>Favish</u>, 541 U.S. at 174.

Blackwell falls well short of satisfying <u>Favish</u>'s reasonable-person standard. Putting aside his abstract appeals to "the integrity of the judicial process," Appellant's Br. at 36, and "shed[ing] light" on "an official investigation," <u>id.</u>, the only evidence Blackwell offers in support of his allegations is his own unsubstantiated declaration testimony.   <u>See</u> JA 302-315.[12]   But such first-person testimony – even though it be in the form of a sworn declaration – is "too

---

[12]      In passing, Blackwell adds that the records he seeks are "of obvious historical value" without explaining why that is the case or citing any supporting authority.   Appellant's Br. at 34; <u>see</u> <u>Favish</u>, 541 U.S. at 175 (noting that the Exemption 7(C) "balancing exercise" may at times require a "determination regarding the significance of the public interest and the historical importance" of a FOIA request).   The records, the oldest of which are merely seven years old, have no historical value – they chronicle the investigation and prosecution of routine financial crimes.

insubstantial" to support an accusation of government wrongdoing and, as a matter of this Circuit's law, "does not 'warrant a belief by a reasonable person that alleged Government impropriety might have occurred.'"  Oguaju, 378 F.3d at 1117 (quoting Favish, 541 U.S. at 174).[13]  Blackwell's testimony is precisely the sort of "'bare suspicion' of wrongdoing" that is too flimsy to trump the FBI's assertion of Exemption 7(C).[14]  Oguaju, 378 F.3d at 1117 (quoting Favish, 541 U.S. at 174).

---

[13]    The record on appeal also contains the declaration of Justin Voss, Blackwell's co-defendant and self-declared friend of "over 50 years." JA 318 (¶ 3). Blackwell does not argue that the Voss Declaration constitutes evidence of governmental misconduct and in fact cites it only once in support of a factual proposition irrelevant to the legal questions raised on appeal. See Appellant's Br. at 3 & n.1.  Voss's declaration essentially parrots the unsubstantiated claims Blackwell himself raises, interspersing them with dramatic queries like "How could this happen?" JA 322 (emphasis in original).  The Voss Declaration is accordingly not evidence of a public interest for purposes of Exemption 7(C).

[14]    Relatedly, Blackwell argues that the government officials named in certain records are of such high rank that their personal privacy is not entitled to protection. See Appellant's Br. at 46-47 (citing JA 128, 139, 141, 227, 280, and 290).  But cursory examination of those records reveals that the named individuals are, in fact, relatively "low-level employees" – an FBI supervisory special agent, an SEC attorney, and a legal attaché at a U.S. embassy – the conduct of whom does not create a public interest.  McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183, 188 (D.C. Cir. 1994); see Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990) (requiring requester to define the public interest with respect to the individual "with sufficient specificity"); Beck v. Dep't of Justice, 997 F.3d 1489, 1493 (D.C. Cir. 1993) (withholding identities of DEA agents and requiring that "a claim of public interest be based on the known facts"); Kimberlin v. Dep't of Justice, 139 F.3d 944, 950-51 (D.C. Cir. 1998) (assistant U.S. attorney "was not a high-ranking official"); see also JA 360-61 (¶ 15) (FBI routinely withholds such identities).  There is no public interest in disclosure of these individuals' identities.

What's more, even were the Court to delve into the substance of Blackwell's declaration testimony, it is clear that no reasonable person could conclude that the "evidence" he recounts is even suggestive of government wrongdoing.  First, he claims that the grants of immunity from prosecution his ex-wife and the Stephans received "clearly suggest[] that there was prosecutorial misconduct."  Appellant's Br. at 30.  Yet he nowhere explains why an immunity grant implies malfeasance, let alone "clearly" so.  Prosecutors enjoy "broad discretion" in offering grants of immunity in order to obtain testimony that may not otherwise be forthcoming. United States v. Perkins, 138 F.3d 421, 424 n.2 (D.C. Cir. 1998); see generally 18 U.S.C. §§ 6002-03 (describing the district court's power to immunize a witness "upon request of the United States attorney").  Other than his insistence that the grants of immunity were improper, Blackwell offers no evidence to support his claim that use of a garden-variety prosecutorial tool like witness immunity suggests governmental wrongdoing.  Besides, the non-public details of an immunity agreement in a single case do not constitute a public interest cognizable under Exemption 7(C).  See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., __ F. Supp. 2d __, 2010 WL 3564260 at *6 (D.D.C. Sept. 9, 2010).

Next, Blackwell claims that the FBI's withholding of the CART report and the government's decision not to introduce it at trial suggest misconduct.  See JA 312 ("Since the Government did not introduce any information from the CART

26

Report at trial, the reasonable conclusion is that the CART Report contained evidence of my innocence."). Again, he fails to explain his conclusion that certain strategic decisions the prosecution made at trial regarding the design of its case indicate misconduct. No reasonable person could so conclude.

### C. <u>Favish</u>'s balancing test weighs decisively in favor of the targeted individuals' interests in personal privacy.

Because Blackwell has failed to offer any cognizable public interest, the Court need not balance the public and private interests at stake. Were it to do so, however – and assuming that the showing Blackwell has made supports his nonexistent public interest – the private interest wins out decisively.

Whereas Blackwell has, at best, adduced a purely speculative public interest in the withheld documents, this Court has observed that "third parties…mentioned in investigatory files" and "witnesses and informants who provide information during the course of an investigation" enjoy an "obvious" and "substantial" privacy interest in their information. <u>Martin</u>, 488 F.3d at 458 (quoting <u>Nation Magazine</u> v. <u>U.S. Customs Serv.</u>, 71 F.3d 885, 894 (D.C. Cir. 1995)). In fact, because Blackwell seeks to obtain law enforcement information regarding such third parties, the privacy interest protected by Exemption 7(C) is "at its apex" whereas the FOIA-based public interest in disclosure is "at its nadir." <u>Id.</u> (quoting <u>Reporters Comm.</u>,

489 U.S. at 780).  Accordingly, the third parties mentioned in the withheld records have a robust privacy interest in continued withholding.

Recognizing the weakness of his public-interest argument, Blackwell unconvincingly tries to undermine the significant personal privacy interests at stake. He first claims that the FBI's inadvertent disclosure of the names of certain third parties in some of the records somehow categorically waives the named individuals' privacy interests for all purposes and, inexplicably, renders their information "public domain."  Appellant's Br. at 47; see id. at 34.  Blackwell provides no supporting authority for his strange suggestion that the FBI can waive the substantial privacy interests a private individual enjoys under Exemption 7(C) on the individual's behalf.

Blackwell's argument is in fact unmoored from controlling law on this point. In Favish, for example, the Supreme Court held that a third-party privacy interest is not diminished merely because the individual's name may have already become a matter of public record or because information identifying him had been published. See 541 U.S. at 171.  This Court, too, has held that the mere naming of an individual in public records – judicial opinions or public police records, say – does not diminish the individual's interest in personal privacy.  See Martin, 488 F.3d at 458 ("[A] person's privacy interest in law enforcement records that name him is not diminished by the fact that the events they describe were once a matter of public

record.") (citing <u>Reporters Comm.</u>, 489 U.S. at 779-80); <u>see also</u> <u>Reporters Comm.</u>, 489 U.S. at 764 (acknowledging a personal privacy interest in a confidential criminal "rap sheet" even when information it contained could be found in public records).[15]  The individuals whose names and personal information are contained in the FBI's investigatory files therefore enjoy a privacy interest at the "apex" of the privacy protection Exemption 7(C) confers.[16]

In contrast, the public interest Blackwell asserts is nonexistent.  As described, <u>supra</u>, his desire to obtain exculpatory information he suspects may exist is a purely private interest and he proffers no competent evidence of governmental wrongdoing affecting his investigation or prosecution.  His abstract appeals to a public interest in ensuring prosecutorial integrity are rhetoric, not evidence.

In short, Blackwell is asking this Court to balance a personal privacy interest that is "at its apex" with a nonexistent public interest that is "at its nadir."  The privacy interest unquestionably prevails.  <u>See generally</u> <u>Nat'l Ass'n of Retired Fed.</u>

---

[15]    Elsewhere Blackwell describes the inadvertent disclosures as evidence of "[i]nconsistent [p]rocessing" that entitles him to additional documents.  Appellant's Br. at 48.  His inconsistent-processing argument is coextensive with his privacy-waiver argument and fails for identical reasons.

[16]    Blackwell claims elsewhere that the names of attorneys contained in the FBI's files must be released merely because those attorneys publicly advertise their services.  <u>See</u> Appellant's Br. at 46.  This argument fails for the reasons described above.

Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething
…outweighs nothing every time.").

## IV. The District Court Properly Upheld the FBI's Invocation of Exemptions 2 and 7(E) to Protect Confidential, Non-Public Forensic Techniques and Information.

The FBI asserted Exemptions 2 and 7(E) in tandem to protect certain
confidential, non-public forensic techniques and information contained in the
records of investigation of Blackwell's financial crimes.  Exemption 2 protects from
disclosure information "related solely to the internal personnel rules and practices
of an agency."  5 U.S.C. § 552(b)(2).  This Court has clarified, however, that
Exemption 2 allows withholding of a great variety of internal guidelines,
procedures, and techniques – not just those related to "personnel."  See Founding
Church of Scientology v. Smith, 721 F.2d 828, 830 & n.2 (D.C. Cir. 1983) (per
curiam) abrogating Allen v. CIA, 636 F.2d 1287, 1290 (D.C. Cir. 1980).  In general,
Exemption 2 protects two categories of records from disclosure: (1) internal agency
matters so routine or trivial that they could not be the subject of genuine public
interest; and (2) internal matters the disclosure of which may risk circumvention of
statutes or regulations.  See Nat'l Treasury Employees Union v. U.S. Customs
Serv., 802 F.2d 525, 528 (D.C. Cir. 1986) (citing Crooker v. Bureau of Alcohol,
Tobacco & Firearms, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc)).  Similarly,
Exemption 7(E) protects from disclosure law enforcement records that "would

disclose techniques and procedures for law enforcement investigation…if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

The District Court correctly held that the sensitive forensic information at issue falls squarely within the scope of both exemptions.  Exemptions 2 and 7(E) apply because the release of the particular techniques the FBI uses during forensic investigation of a computer would risk circumvention of the law and would empower hackers who seek to exploit a computer's vulnerabilities.  See JA 59-60, 73, 381-82.  Additionally, both exemptions justify withholding of methods of data collection, organization, and presentation contained in certain records called "ChoicePoint reports."  Id. 60.  ChoicePoint is a subscription database service the FBI uses in the normal course of criminal investigations.  Id.  Although the data the ChoicePoint databases contain are derived from public sources, the methods by which ChoicePoint searches, organizes, and reports data to the FBI are not publically available.  Id.  These confidential methods were in fact developed by ChoicePoint specifically to meet the investigative needs of the FBI.  Id.  The District Court therefore correctly concluded that all of the withheld information related solely to the FBI's internal practices and upheld the FBI's invocation of Exemption 2.  Moreover, because release of the information could potentially

facilitate lawbreaking, the District Court also properly ruled that the information could be withheld under Exemption 7(E).

Blackwell raises four arguments in contending that the FBI improperly invoked the exemptions. First – again reprising his theme of suspected prosecutorial misconduct – he claims that Exemption 2 does not apply because "there is obviously a very strong public interest in having full disclosure of information which impacts on the outcome of a criminal trial." Appellant's Br. at 38. Second, he argues that because the information the FBI withheld is already public it therefore must be released. Third, he claims that the information cannot be withheld because the FBI's declarant lacks "personal or expert knowledge" regarding the investigatory techniques described. Id. at 39. Fourth, he claims that the FBI's declaration is insufficiently detailed to justify the withholding. As explained in turn, none of these arguments has merit.

First, Blackwell's public-interest argument misses the mark because this Court does not consider the public interest to evaluate whether an agency has properly invoked Exemption 2. See Crooker, 670 F.2d at 1074 & n.60 ("It is not up to this court to balance the public interest in disclosure against any reason for avoiding disclosure [under Exemption 2]….Nor is it for this court to decide which disclosures are in the public interest…."); see also Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 165 (D.D.C. 2004) ("In light of

Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant.").

Even were Blackwell correct to suggest that the public interest does play into this Court's analysis, his argument fails nonetheless. The District Court correctly held that disclosure of the sensitive forensic information Blackwell seeks "would not serve a public purpose." JA 382. Blackwell's speculation to the contrary is simply incorrect. He argues – with neither supporting authority nor evidence – that there is "a very strong public interest" at stake because "the public has a right to know whether the suppressed material…contains exculpatory information…." Appellant's Br. at 38. As the FBI explained in the context of Exemption 7(C), supra, a FOIA requester's mere speculation that withheld records may contain Brady material cannot trump an agency's proper invocation of a FOIA exemption.

Second, the information withheld is not publicly available, as Blackwell erroneously claims. His argument ignores the fact that although the ChoicePoint reports he challenges are based on data derived from public sources, the techniques of data collection, organization, and presentation that the reports reveal are not. Nor, pace Blackwell, are those techniques known to the general public. The data-manipulation techniques at issue are in fact generically distinct from obvious techniques like wiretapping, use of a post-office box, or pretextual telephone calls that are well known outside the realm of law enforcement. See, e.g., Rosenfeld v.

33

Dep't of Justice, 57 F.3d 803, 815 (9th Cir. 1995) (telephone calls); Billington v.

Dep't of Justice, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) (wiretap and use of post-

office box); see also Struth v. FBI, 673 F. Supp. 2d 949, 970 (E.D. Wis. 1987)

("garden variety ruse" not protected).  In contrast, the techniques for which the FBI

seeks protection here are precisely the type of internal law enforcement techniques

that Exemptions 2 and 7(E) were designed to protect.  See, e.g., Barnard v. Dep't of

Homeland Sec., 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (recognizing that "[t]here is

no principle…that requires an agency to release all details of techniques simply

because some aspects are known to the public"); Dorsett v. U.S. Dep't of Treasury,

307 F. Supp. 2d 28, 36-37 (D.D.C. 2004) (Exemption 2 protects "internal protective

investigative information" used by the Secret Service); Windels, Marx, Davies &

Ives v. Dep't of Commerce, 576 F. Supp. 405, 409-10 (D.D.C. 1983) (protecting

under Exemptions 2 and 7(E) computer program designed to detect possible law

violation).

    Third, Blackwell's argument that the FBI is required to justify its

withholdings with expert testimony is baseless.  Blackwell offers no legal authority

in support of that proposition because no such authority exists.   A declaration

justifying an agency's invocation of Exemption 2 need only be based on

"competent evidence."  Maydak v. U.S. Dep't of Justice, 362 F. Supp. 2d 316, 321

(D.D.C. 2005).  And although expert testimony may indeed be sufficient, it is

certainly not <u>necessary</u> to support a withholding under Exemption 2.  Instead, a

declaration that offers the declarant's "personal knowledge" of the technique for

which protection is sought will suffice.  <u>See, e.g.</u>, <u>Wheeler</u> v. <u>U.S. Dep't of Justice</u>,

403 F. Supp. 2d 1, 16 (D.D.C. 2005) (finding an FBI declaration based on "personal

knowledge" of information withheld under Exemption 2 "sufficient" to justify

withholding).    Here, the First Hardy Declaration is based on the personal

knowledge of the declarant and on information provided to the declarant in his

official capacity and is therefore sufficient to justify the FBI's withholding under

Exemption 2.  <u>See</u> JA 46.  Blackwell's contrary assertion that the FBI's declarant

must possess "special expertise in criminology or criminal psychology or computer

analysis of financial transactions" is entirely unjustified.  Appellant's Br. at 40.

Fourth, the District Court correctly held that the FBI provided a sufficiently

detailed justification for its withholdings under Exemptions 2 and 7(E).  <u>See</u> JA

381-82.    The First Hardy Declaration explains the actions the FBI's CART

technicians undertook while investigating computers located in Blackwell's office;

the potential risk of circumvention of the law by malicious individuals that could

result from public disclosure of the FBI's investigatory techniques; and generally

described the non-public techniques protected.  <u>See</u> <u>id.</u> 59-60, 73-74.   The FBI has

offered a legally sufficient justification for the withholdings.

## V.     The FBI's Search for Responsive Records was Adequate.

In addition to attacking the FBI's exercise of various exemptions, Blackwell claims that its search for records was inadequate because the agency did not use the names of the individuals listed in his FOIA request as search terms.  See Appellant's Br. at 23-28.  As he does throughout, Blackwell stresses the alleged inadequacy of the search by emphasizing the potential importance of the records in challenging his conviction and exposing hypothesized government misconduct.  His professions of innocence notwithstanding, Blackwell proffers no evidence that points to an inadequacy in the FBI's search methodology or in the declarations describing it.

An agency proves the adequacy of a FOIA search by offering a reasonably detailed declaration so long as a requester adduces evidence of bad faith.  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  The agency's supporting declaration is entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., 926 F.2d at 1200 (internal citation and quotation marks omitted).

The Hardy Declarations the FBI offers comfortably meet this standard.  In response to Blackwell's request, the FBI searched its CRS and ELSUR indices using six variations of his name but uncovered no responsive documents.  See JA

55 (¶ 35), 354-55 (¶ 5).  At the FBI's suggestion, Blackwell then directed his request to the Cincinnati Field Office, which subsequently uncovered one multiple subject file containing 3,319 potentially responsive records.  See id. 49 (¶ 16). Upon further processing, the FBI determined that 1,869 pages were actually responsive to Blackwell's request and, after review, released 1,103 pages in full, 557 in part, and withheld 209 in their entirety.  See id. 50 (¶ 20).

The FBI did not search for responsive records using the names of the individuals Blackwell enumerated in his request, nor was it obliged to.  Pursuant to long-standing FBI policy, the agency will not conduct searches on third parties unless a requester submits a proof of death, a privacy waiver from the targeted individual, or can otherwise articulate a substantial public interest that outweighs the targeted individuals' privacy interests.  See id. 355-56 (¶ 7); see also id. 116. As explained, supra, Blackwell has made no showing that his request implicates a public interest.   At the time he submitted his October 2007 request, he provided the FBI with public-interest arguments similar to those he presents on appeal.  See id. 25-30.  In a nutshell, he argued there, as he does here, that he needs records containing information about third parties in order to challenge his criminal conviction.   See id. 28-30.   The FBI properly deemed this argument too insubstantial to overcome the individual privacy interests at stake and properly

concluded that releasing the information Blackwell sought "would constitute an unwarranted invasion of the personal privacy of third parties." Id. 116.

Consequently, whether the FBI actually searched for the third-party records Blackwell requested is immaterial because Blackwell was not entitled to the records in the first instance. See, e.g., Edwards v. Dep't of Justice, 2004 WL 2905342 at *1 (D.C. Cir. Dec. 14, 2004) (granting summary affirmance because the agency's refusal to search for requested records "deprived [the FOIA requester] of nothing to which he is entitled"). For example, this Court held in Oguaju that once the U.S. Marshals Service ("USMS") had determined that a FOIA requester failed to make out a sufficient public-interest showing under Exemption 7(C), the adequacy of the agency's search became a moot point, as did the agency's refusal to search for the documents requested. See 288 F.3d at 451.

Just so here. Like the USMS in Oguaju, in this case the FBI evaluated the public-interest justifications Blackwell proffered in his FOIA request and found them too meager to outweigh the substantial privacy interests at stake. The FBI's refusal to conduct the requested third-party searches was proper, albeit entirely irrelevant to the adequacy of the search ultimately conducted. Blackwell has produced no evidence of the inadequacy of the FBI's search – let alone evidence that gives rise to the "substantial doubt" of adequacy that this Court requires. Iturralde v. Comptroller of the Currency, 315 F.3d 311, 314 (D.C. Cir. 2003).

Blackwell raises an ancillary adequacy argument in which he claims that the FBI "improperly curtailed the volume of the records it did identify as responsive." Appellant's Br. at 27.  He never raised this argument in the district court and so cannot raise it here for the first time.  See Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (citing Greenhill v. Spellings, 482 F.3d 569, 572 (D.C. Cir. 2007)).

But even assuming that Blackwell preserved this argument, it lacks merit. On July 31, 2008, the FBI notified him that it had located approximately 3,319 pages that were "potentially responsive" to his request.  JA 35, 49 (¶ 16).  In subsequent correspondence, the FBI explained that the potentially responsive records resided in a "multiple subject file" from the Cincinnati Field Office.  Id. 116.  As its name denotes, a "multiple subject file" contains documents on many subjects, not just the primary subject of an FBI investigation.  See id.  Accordingly, after locating Blackwell's investigatory file, the FBI culled non-responsive documents from it (including documents pertaining to third parties and other extraneous matter such as duplicate copies of documents) and determined that of the 3,319 potentially responsive documents originally located, 1,877 documents were actually responsive to the request.  See id. 115.[17]  The FBI did not curtail its

---

[17]  The actual number of responsive documents was 1,869 – the 1,877 figure originally reported to Blackwell was an error.  See JA 50 (¶ 20 & n.4).

review of documents in response to either of the proposals Blackwell sent in which

he offered to reduce the scope of his request.[18]  There was nothing improper about

the number of documents the FBI uncovered, reviewed, or released.

## VI.    The FBI's <u>Vaughn</u> Index is Adequate.

Finally, Blackwell argues that the FBI's <u>Vaughn</u> index does not pass muster

with respect to several documents that were withheld, because, he claims, the FBI

has either inadequately described exempt information or failed to provide

nonexempt, segregable information.  None of the challenges Blackwell raises has

any merit.

Blackwell's segregability argument fails as a general matter because he

misunderstands the legal standard to which the FBI is held.  An agency need only

show with "reasonable specificity" why information contained in a particular

document cannot be further segregated.  <u>Loving</u> v. <u>Dep't of Defense</u>, 550 F.3d 32,

41 (D.C. Cir. 2008) (quoting <u>Johnson</u> v. <u>Executive Office for U.S. Attorneys</u>, 310

F.3d 771, 776 (D.C. Cir. 2002)) (internal quotation marks omitted).   The

---

[18]    In its factual recitation, the District Court erroneously stated that "[t]he FBI reviewed 1,877 pages of records responsive to Dr. Blackwell's reduced request."  JA 374.  The record in this case shows – and both parties to this appeal agree – that the FBI processed Blackwell's original request from October 2007, not the reduced request Blackwell proposed in March 2009.   <u>See</u> <u>id.</u> 115-16; Appellant's Br. at 27-28.  There is, however, no basis to Blackwell's contention that the reduced request proposed in March 2009 was "withdrawn."  Appellant's Br. at 28.   In any case, the parties agree that the District Court's minor factual misstatement has no bearing on the legal issues presented on appeal.

combination of the <u>Vaughn</u> index itself and the agency's supporting declarations is sufficient show that the agency satisfies this standard. <u>Id.</u> (quoting <u>Johnson</u>, 310 F.3d at 776).

Here, instead of applying the applicable reasonableness standard, Blackwell argues that the FBI must describe with minute particularity the "context of the withheld material." Appellant's Br. at 43. He even goes as far as to insist that the FBI must inform him whether each portion of information withheld consists of "red hot evidence of the crime," "exculpatory evidence," or mere "noncommittal responses," though he fails to cite any authority that holds the FBI to that exacting and particularized descriptive standard. <u>Id.</u> at 43.

Indeed, this Court has previously endorsed the very coding system the FBI employed in its <u>Vaughn</u> index in this case and has held that, so long as an accompanying declaration explains each code "in considerable detail, describing generically why information so designated qualifies for an exemption," the index is sufficient. <u>Keys</u> v. <u>U.S. Dep't of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987). The FBI has done precisely that here. The First Hardy Declaration liberally describes every code the FBI applied to the category of information withheld under each exemption. <u>See</u> JA 59-74. The <u>Vaughn</u> index then lists each applicable code with respect to every document withheld. For example, pages BL1176-BL1182, which Blackwell challenges, contain information withheld under category codes (b)(6)-2

41

and (b)(7)(C)-2, which correspond to names and identifying information of third parties of investigative interest, and under codes (b)(6)-4 and (b)(7)(C)-4, which correspond to names and identifying information concerning third parties merely mentioned. <u>Id.</u> 266. The privacy information contained on those pages is so intertwined that, once redacted, the pages contain no meaningful segregable information. <u>Id.</u> 358 (¶ 11). Though Blackwell insists without basis that he is entitled to more particularized descriptions, the descriptions provided here precisely mirror the descriptive system endorsed in <u>Keys</u>.[19]

As <u>Keys</u> holds – and contrary to Blackwell's erroneous understanding of the applicable descriptive standard – the FBI is not required to "identify the information that had been blacked out <u>on each specific document</u>…." 830 F.2d at 349 (emphasis in original & internal quotation marks omitted). Blackwell's argument also "disregards the propriety of using generic terms so long as they have been defined aptly for purposes of resolving FOIA claims." <u>Id.</u> As <u>Keys</u> observed, the approach Blackwell demands – and the approach <u>Keys</u> rejects – would require the

_____

[19] In this connection, Blackwell erroneously argues that the FBI has unlawfully withheld information about himself. <u>See</u> Appellant's Br. at 44-46. As the Second Hardy Declaration describes at length, after a second review of the challenged documents the FBI has determined that (1) there is no other personally identifiable information that can be released; (2) the information Blackwell challenges was not part of the sample he selected; (3) names and identifying information redacted were those of third-party individuals, not companies, as Blackwell erroneously claims; and (4) the individuals whose identities have been withheld were entitled to the privacy protections of Exemption 7(C). <u>See</u> JA 358-61 (¶¶ 11-17). The withholdings are proper and properly described.

agency to supply either an unnecessary "phony individualization" of the reasons for each redaction or "a degree of detail that would reveal precisely the information that the agency claims it is entitled to withhold." Id. When, as here, the FBI has adequately explained each withholding using the "functional categories" represented by the codes, the Vaughn index provides a sufficient description of withheld information. See id. Blackwell's proffered incredulity at the FBI's representations that many documents contained no segregable information after application of the category codes is not a legal argument and, in any case, cannot rebut the presumption of good faith to which the FBI declarations are entitled. See Appellant's Br. at 44 ("It is difficult to conceive that the entire content is protected by both exemption claims…."). The FBI's Vaughn index is sufficient.

## CONCLUSION

For the foregoing reasons, Appellant respectfully submits that the judgment of the District Court be affirmed.

RONALD C. MACHEN JR.
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

*/s/ David C. Rybicki*
DAVID C. RYBICKI
Assistant United States Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the attached Appellee's brief complies with Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface, using Microsoft Word's 14-point Times New Roman font and contains 10,427 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(2).

*/s/ David C. Rybicki*
DAVID C. RYBICKI
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 29th day of December 2010, a copy of the foregoing Appellee's brief was served electronically by the United States Court of Appeals for the District of Columbia Circuit's CM/ECF System on Counsel for Appellant, Julia Greenberg, Esq., and James H. Lesar, Esq.

<u>/s/  David C. Rybicki</u>
DAVID C. RYBICKI
Assistant United States Attorney